Webre vs. Lutcher & Moore.

## No. 11,169.

## J. MENELAS WEBRE VS. LUTCHER & MOORE.

An unknown owner of assessed immovable property is one who has no agent to represent him, and whose place of business, residence and postoffice address are not known to the tax collector.

Lands purchased from the State and described on the tax rolls in subdivisions, according to United States survey, are sufficiently described.

The description by subdivisions will control the number of acres alleged to exist on the tax roll and the tax deed.

APPEAL from the Eighteenth District Court, Parish of Lafourche. *Caillouet, J.*

*N. R. Roberts* and *L. F. Suthon* for Plaintiff and Appellee :

Notice by publication to a tax debtor, who is known, who resides in the State, but whose postoffice is unknown, is no notice at all. Const. 1879, Art. 210.

The tax collector or assessor in this case should have ascertained the name and address of the tax debtor at Baton Rouge. R. S. of 1870, Art. 2922; 43 An. 987.

Want of notice in the manner pointed out by law in proceedings to enforce taxes is not a mere formal defect, but is a radical one, and is not cured by the prescription of three years, or of five years. 43 An. 437; 32 An. 297.

*Clay Knobloch contra.*

The opinion of the court was delivered by

MCENERY, J. This is a suit to annul a tax sale made in pursuance of Act 96 of 1882.

The facts are that the plaintiff, in 1854, bought certain swamp lands from the State situated in the parish of Lafourche.

In 1882-83 the lands were assessed on the tax rolls to J. M. Webre on the list of known owners of taxable property. Although not placed on a separate tax roll, in pursuance of Sec. 8 of said act, the tax collector, after having given notice by publication, sold these lands at tax sale as the property of an unknown owner. W. H. Ragan purchased them and sold them to the defendants.

The lands were vacant, unoccupied and uncultivated. The plaintiff had never, until the year 1891, when he instituted this suit, recorded his title to said lands.

He had no agent to represent him in the parish of Lafourche. He resided in the parish of St. James. The tax collector did not know whether he lived in or out of the State. He did not know the post-office address of plaintiff. The first time the tax collector saw him was on the trial of this case. He knew that he was a non-resident—that is, that he did not live or have a domicil in the parish of Lafourche.

The plaintiff never saw the lands, or authorized any one to take possession of them. He received no written or printed notice, through the mail or otherwise, that he was a delinquent tax-payer. He never paid any tax assessed against the property.

The assessment and the act of sale do not contain a full description of all the property claimed by plaintiff, but they contain a correct description of the property assessed and sold at tax sale.

The lands were described by subdivision pursuant to the United States surveys.

Plaintiff alleges that the tax sale to Ragan is null and void because no notice was served on him as required by Secs. 49, 50 of Act 96 of 1882, and by Article 210 of the Constitution of the State, and for the further reason that the description of the property, both on the assessment roll and in the act of sale, is not correct.

The answer of defendants is a general denial, except that they admit the tax sale—the sale by Ragan to defendants, Lutcher and Moore, and they aver that the sale was preceded by all due and legal requisite notices and advertisements, and that the description of the property in the assessment roll, advertisement and tax deed was correct. There was judgment for the plaintiff and defendants appealed.

Article 210 of the Constitution provides that the collector shall, without suit and after giving notice to the delinquent in the manner to be provided by law (which shall not be by publication except in case of unknown owners), advertise for sale the property on which the taxes are due. * * *

Section 49 of Act 96 of 1882 provides for a written or printed notice to be served on the delinquent to pay the taxes assessed against the immovable property within twenty days after the service or mailing

of said notice.   Section 50 of the act provides that the above notice shall be delivered to each tax-payer in person or shall be left at his residence or place of business, or shall be mailed to him by postal card addressed to the postoffice of said tax-payer.   Section 51 of said act provides by publication for notice to unknown owners of assessed immovable property.

The question presented is whether or not the plaintiff was an unknown owner of assessed immovable property?   If so, it is not pretended that the notice by publication is not legal and valid.

Section 8 of Act 96 of 1882 provides the duties of the assessor in listing property belonging to absent unknown owners, and he is required to make a separate list describing each tract of land belonging to any absent owner whose name is unknown.   He is directed by said section to examine the records of the office of mortgages and conveyances, and the abstract of land entries, and shall otherwise make faithful inquiry and investigation to ascertain what taxable property in his district or parish belongs to residents and absent owners and to unknown owners.

By this section the assessor is directed to make an inquiry for property belonging to three classes of owners: (1) resident owners, (2) absent owners, (3) unknown owners; and corresponding to the inquiries he is required to make two lists: (1) resident and absent owners whose names are known; (2) unknown owners.

It is the duty of the owner of property, whether an absentee or resident tax-payer, to aid and assist the assessor by giving him correct information as to the ownership, description and valuation of the property.

When the title to the property is not of record, the investigations of the assessor must of necessity be limited, and his description of ownership to a great degree conjectural.   If the tax-payer fails in his duty in furnishing information as to his residence, he has himself to blame if he finds himself in the list of unknown owners of property.

The law absolutely requires this duty on the part of the owner of property.

The property in this case had been assessed to J. M. Webre.   He was in fact the owner of the property.   But he had never placed his title on record, nor had he given the assessor as required by law the description of his property, nor had he appointed any agent to

represent him in the parish of Lafourche, where the property was situated.

The tax rolls went to the tax collector, with property described on it which was not to be found in the records of the parish as belonging to the party to whom it was assessed. It was vacant, unoccupied property, with no indications of ownership.

Under these circumstances what was he to do? He was charged with the tax roll and held to a rigid responsibility for the collection of the tax.

We think his duty was clearly indicated and pointed out in Secs. 49, 50 and 51 of Act 96. The sections to which we have referred have reference to the duties of the assessor; 49, 50 and 51 are directed to the tax collector.

Sec. 50 requires the tax collector to deliver the written or printed notice designated in Sec. 49 to the delinquent in person, or at his residence, or mail it to him by postal card addressed to his postoffice. Sec. 51 requires one general notice by publication to all unknown owners of assessed immovable property situated in his parish.

He could not comply with Sec. 50 because he did not know the absent owner. He did not live in the parish and had no agent there, therefore he could not make either a personal or domiciliary service. He could not serve notice by mail because he did not know the absent owner's address.

There was but one mode of making service, which was by publication, as prescribed in Art. 210 of the Constitution and Sec. 51 of Act 96, for service on unknown owner of assessed immovable property.

The plaintiff was to all intents and purposes and within the meaning of Art. 210 of the Constitution and Act 96 of 1882 an unknown owner of the property assessed to J. M. Webre.

The plaintiff's counsel refer to case of McWilliams vs. Michel, 43 An. 984, and Sec. 2922, Rev. Stat., to sustain their position that the tax collector or assessor should have ascertained the address of the plaintiff at Baton Rouge. In the case of McWilliams vs. Michel we said " the State had notice of the title to the property in Thomas Mills. She can not ignore this fact and assess the property to a person not the owner, sell it and acquire title to it." The facts in that case were that the patent to the land had issued from the State Land Office to Thomas Mills. The property was assessed to Garandi, who never owned it, and under this assessment it was sold at tax

37*

sale. The case has no bearing on the issues involved in this, as the facts are not the same.

Section 2922, Revised Statutes, provides that "it shall be the duty of the Register of the State Land Office to furnish annually, on the first Monday of January, the Auditor of Public Accounts with a list of all the lands which may have been entered the preceding year, and the names of the persons entering the same, and the respective parishes in which they may be situated; and it shall be the duty of the Auditor of Public Accounts to transmit as soon thereafter as possible, to the various State collectors in whose parishes any of said land may be situated, a list of the lands and the names of the persons by whom they were entered, in order that they be assessed for taxes."

This section is an additional means resorted to in order to place the land sold by the State on the tax roll. The omission of the State officers to do their duty can not relieve the plaintiff from his as a tax-payer. The Auditor may have performed his duty in 1882, and forwarded the list at that late day to the tax collector, with the name of plaintiff who entered the land. But this fact alone does not contradict the fact that he was not a resident of the parish, had no agent there, and his postoffice was unknown to the tax collector, that the land was vacant and unoccupied and apparently abandoned.

It was competent for the Legislature under Art. 210 of the Constitution to declare who were unknown owners, and how notices should be served on them. We think the Legislature has practically done so in Secs. 50 and 51 of Act 96. Section 50 provides for notice to the tax-payer whose postoffice is known, and who resides in the parish. Section 51 provides for all "unknown owners of assessed immovable property" whose residence is not in the parish and whose postoffice is unknown. It can not be contended that the Legislature intended to omit any class of owners. Therefore, those who did not have a residence in the parish, or agents there, or whose postoffice was unknown, must necessarily be included in the class of unknown owners of assessed immovable property mentioned in Sec. 51.

The property was not known by any particular name. Its description by subdivision was sufficient and in strict compliance with Sec. 7 of Act 96.

The plaintiff certainly had no cause to complain that a portion of his property was omitted from the assessment roll. This omission

is no cause for annulling the assessment of that which was properly assessed.

The variance between the acreage in the assessment, advertisement and deed can make no difference, as the purchaser could only get title to the amount of land contained in the several subdivisions.

There is no equity whatever in the demand of plaintiff. To permit a party to take advantage of a state of facts which he has created; to avoid recording title to his property for thirty-seven years in order to escape taxation, and await the increased valuation of his property, and when his property is eventually assessed and sold at a tax sale, to come forward and record his title and to demand the nullity of the tax sale, and for these reasons to annul the sale, would be to give a premium to any owner of property to secrete his title, conceal his identity, place of residence and postoffice, in order to escape the taxation of his property and reap the fruits of its speculative value.

The revenue laws never intended such a result.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of defendants, and that plaintiff's suit be dismissed with costs of both courts.

## On Application for Rehearing.

Fenner, J. We adhere to our decision in this case, but wish to say that it is based upon and confined to the particular facts fully stated in the opinion, and is not intended to give a license to tax collectors to dispense with notice to absent owners whose names are known, but whose residence is unknown, without exhausting the means provided by law for ascertaining the latter. If plaintiff's title had been of record, or if the land had been in possession of any one, resort to the records or to the possessor might have suggested means of tracing his residence. But the act under which the tax was levied made no provision for appointment of curators *ad hoc* and provided only three modes of notice: (1) personal or domiciliary notice to residents; (2) mailing to non-residents; (3) publication. This party was a non-resident; the mailing of notice, unless addressed to his proper postoffice, would have been ineffective and null, and as the collector did not know and had no means of ascertaining his postoffice, resulting from the tax-payer's own fault and neg-

ligence, the collector must either have given notice by publication or abstained from proceedings to collect the tax. Such a contingency could not have been contemplated by the law, and the collector was justified in treating him as, to all intents and purposes, an unknown owner, and giving the only notice possible—*i. e.*, by publication.

Rehearing refused.